UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

───────────────────────────────────

ZUMAR DuBOSE,

                        Plaintiff,

          v.                                        9:24-CV-1023
                                                              (AMN/ML)

UNITED STATES OF AMERICA, et. al,

                        Defendants.

───────────────────────────────────

APPEARANCES:

ZUMAR DuBOSE
20472-509
Plaintiff, Pro Se
FEDERAL CORRECTIONAL INSTITUTION
P.O. Box 900
Ray Brook, NY 12977


ANNE M. NARDACCI
United States District Judge

**DECISION and ORDER**

## I.    INTRODUCTION

      In August, 2024, plaintiff Zumar DuBose commenced this action by filing a pro se civil rights complaint. *See* Dkt. No. 1 ("Compl."). By Order entered on August 26, 2024, this action was administratively closed based on plaintiff's failure to comply with the filing fee requirement. Dkt. No. 2. Thereafter, plaintiff filed an application to proceed in forma pauperis, together with the inmate authorization form required in this District, and the Clerk was directed to re-open this action and restore it to the Court's active docket. Dkt. No. 3 ("IFP Application"); Dkt. No. 4 ("Inmate Authorization Form"); Dkt. No. 5 ("Re-Opening

Order").

Plaintiff, who is incarcerated at Ray Brook Federal Correctional Institution ("FCI Ray Brook"), currently has one other action pending in this District.  *See DuBose v. Bureau of Prisons*, 9:24-CV-0877 (AMN/ML) (N.D.N.Y. filed July 15, 2024) ("*DuBose I*").[1]

## II.    DISCUSSION

### A.    *DuBose I*

In his complaint in *DuBose I*, plaintiff asserts claims based on six separate incidents of wrongdoing beginning on July 2, 2024, when he arrived at FCI Ray Brook.  *See DuBose I*, Dkt. No. 1 at 2-5.  First, plaintiff alleges that "BOP F.C.I. Ray Brook employees forced [him] to breath tobacco smoke, marijuana smoke, mold, [and] K2 synthetic smoke coming thru the ventilation[,]" which has caused him "to have mucus with blood in it, watery eyes, . . . second hand intoxications, hallucinations . . . , unnecessary coughing, [and] weezing [sic][.]"  *Id*. at 2.  Second, plaintiff alleges that he has been "forced . . . to have . . . psychotic episodes . . . and mental hallucination" because he is allergic to his prescribed medication.  *Id*. at 2-3.  Third, plaintiff alleges that he has been placed on a diet that is nutritionally inadequate.  *Id*.  Fourth, plaintiff alleges that he has been "forced to jump on and off [of] bunk beds" as a result of not having a ladder in his cell, which has caused him foot, leg, and back pain and complications with walking.  *Id*. at 4.  Fifth, plaintiff alleges that he was "forced . . . to drink rotten and spoiled milk" on three separate days, and "rotten and spoiled fruit" on three other days, which "caus[ed] [him] to vomit and have mental pain and hunger pain."  *Id*.  Sixth, plaintiff alleges

---

[1]  On October 17, 2024, this action was re-assigned to the undersigned.  *See* Dkt. No. 6.  On November 5, 2024, a third action filed by plaintiff, captioned as *DuBose v. Bureau of Prisons*, 9:24-CV-1102 (AMN/ML) (N.D.N.Y. filed Aug. 20, 2024) ("*DuBose III*"), was dismissed by this Court without prejudice to plaintiff filing an amended complaint in this action.  *See DuBose III*, Dkt. No. 5.

2

that he has been "forced . . . to live in a 4 man cell with other inmates who talk to themselves

. . . [and] use the toilet" between the hours of 2 a.m. and 6 a.m., and "bang[ ] on the bed

frame like a drum[,]" which has deprived him of sleep.  *Id*. at 5.

By Decision and Order entered on August 26, 2024, this Court reviewed plaintiff's

litigation history in accordance with 28 U.S.C. § 1915(g), found that plaintiff had acquired at

least three "strikes" before July, 2024, *i.e.*, prior to him initiating *DuBose I*, and further found

that "none of the alleged harms identified in the complaint plausibly suggest that plaintiff was

at risk of an 'imminent danger of serious physical injury' when he commenced this action."

*See DuBose I*, Dkt. No. 6 ("*DuBose I* Screening Order").  Accordingly, the Court denied

plaintiff's IFP application and conditionally dismissed the action unless plaintiff did one of the

following within thirty (30) days: (i) paid the Court's filing fee of four hundred and five dollars

($405.00) in full; or (ii) filed an amended complaint demonstrating that he faced an "imminent

danger of serious physical injury" from one or more appropriately named defendants when

he commenced the action.  *Id*. at 9-10.

Instead of complying with the Court's directive, plaintiff filed a notice of appeal of the

*DuBose I* Screening Order.  *See DuBose I*, Dkt. No. 7.

### B.    Overview of the Complaint

Plaintiff commenced the instant action roughly two weeks after he filed his notice of

appeal in *DuBose I*.  The complaint in this case repeats the same allegations of wrongdoing

set forth in *DuBose I*, and also includes similar allegations of wrongdoing related to loss of

sleep, inadequate nutrition, and restrictive confinement conditions based on events that

occurred after the filing of *DuBose I*.  *Compare* Compl. *with DuBose I*, Dkt. No. 1.

3

C.    **Stay Pending Appeal**

It is well-settled that district courts have discretion to stay their cases, as "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its own docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). "This authority is not limited to cases involving identical parties or issues." *Fagan v. Republic of Austria*, No. 08-CV-6715, 2009 WL 1423338, at *4-5 (S.D.N.Y. May 19, 2009) (citing *Landis*, 299 U.S. at 254-55. Rather, courts may stay proceedings in a number of situations, including "when a higher court is about to decide a pertinent issue of law." *Id.*; *see also Wing Shing Products (BVI) Ltd. v. Simatelex Manufactory Co.*, No. 01-CV-1044, 2005 WL 912184, at *2 (S.D.N.Y. April 19, 2005).

Courts generally consider the following five factors in determining whether to stay a proceeding: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *In re Literary Works in Electronic Databases Copyright Litigation*, No. M-21-90, MDL No. 1379, 2001 WL 204212, at *2 (S.D.N.Y. Mar. 1, 2001) (quoting *Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996)).

As an initial matter, by virtue of filing this action roughly two weeks after filing a notice of appeal in *DuBose I*, plaintiff has asked the Court to consider the sufficiency of imminent danger allegations that are materially similar to imminent danger allegations that are the

4

subject of his pending appeal, notwithstanding the fact that his notice of appeal in *DuBose I* divests the Court of jurisdiction over that case. *See, e.g., United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir.1996) (noting that it is well established that the filing of a notice of appeal generally "confers jurisdiction on the [appellate court] and divests the [trial] court of control over those aspects of the case involved in the appeal"); *see also Stewart Park and Reserve Coalition, Inc. (SPARC) v. Slater*, 374 F. Supp. 2d 243, 250 (N.D.N.Y.2005) ("As a general rule, the filing of a timely notice of appeal divests a district court of jurisdiction over the action." (collecting cases and citing, *inter alia*, *Toliver v. County of Sullivan*, 957 F.2d 47, 49 (2d Cir. 1992))). In doing so, plaintiff has set the stage for a potential ruling that is inconsistent with how the Circuit may rule in *DuBose I*, which is exactly what the divestiture rule is designed to avoid. *See Rodgers*, 101 F.3d at 251 (noting that the divestiture rule is founded on "concerns of efficiency"); *United States v. Salerno*, 868 F.2d 524, 540 (2d Cir. 1989) (explaining that the purpose of the divestiture rule is to avoid "confusion or waste of time from having the same issues before two courts at the same time"). Thus, only plaintiff's interests are furthered by this Court not imposing a stay in this case pending the Circuit's decision on the appeal in *DuBose I*.

Furthermore, insofar as plaintiff wished to avoid this result and any corresponding delay in consideration of the merits of his underlying claims, he could have simply amended his complaint in *DuBose I* and withdrawn his appeal. Indeed, as aptly noted by another district court confronted with a similar situation, "it is not proper for a plaintiff to duplicate a complaint from another pending action, supplement it with a few additional allegations and defendants, and then file it in a new action, as . . . [t]his sort of conduct unnecessarily

5

multiplies proceedings against the same defendants[, ] . . . wastes judicial resources[, and] . . . undermines the purpose of the [Prison Litigation Reform Act], which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts." *Theriot v. Woods*, No. 18-CV-193, 2018 WL 6264832, at *2-3 (W.D. Mich. Nov. 30, 2018). In other words, any prejudice that plaintiff may suffer as a result of a delay in consideration of the merits of his claims is of his own doing.

In light of the foregoing, the Court finds that the above factors weigh in favor of staying this case pending the Second Circuit's decision on plaintiff's appeal of the *DuBose I* Screening Order, or plaintiff's withdrawal of that appeal. In the event plaintiff elects to withdraw his appeal in *DuBose I*, this Court will consider, in this action, the entire scope of the wrongdoing that plaintiff has attempted to present in *DuBose I*, *DuBose III*, and this action.

**III.    CONCLUSION**

**WHEREFORE**, it is hereby

**ORDERED** that this action is **STAYED** pending the Second Circuit's decision on plaintiff's appeal of the *DuBose I* Screening Order, or plaintiff's withdrawal of that appeal, as set forth above. The Clerk shall return this file to the Court following the Second Circuit's decision on plaintiff's appeal of the *DuBose I* Screening Order, or plaintiff's withdrawal of that appeal; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on the plaintiff.

**IT IS SO ORDERED**.

Dated: November 5, 2024
        Albany, NY

Anne M. Nardacci
U.S. District Judge

6